Alfonso **GEIGER**, Petitioner,

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE**, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 23, 1994.

Decided Feb. 21, 1995.

---

Kent D. Watkins, for petitioner.

Arthur R. Thomas, Asst. Chief Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Alfonso Geiger appeals from an order of the Pennsylvania Board of Probation and Parole (Board) denying Geiger's pro se request for administrative review of the Board's decision to revoke Geiger's parole. We affirm.

Over a period of about fifteen years, on three different occasions, Geiger was convicted and sentenced for the following offenses: (1) third degree murder;[1] (2) robbery; and (3) theft, receiving stolen property and criminal mischief. In each instance, Geiger was released on parole under parole number 1998–K, only to be recommitted as a convicted parole violator.

On July 29, 1991, Geiger was released on parole following his conviction for theft, receiving stolen property and criminal mischief. The release was pursuant to two separate orders of the Board, both referencing parole number 1998–K. However, one of the orders, issued under facility number F–5354, which is the State Correctional Institution at Graterford (SCI–Graterford), contained a maximum release date of January 2, 1999, relating to the murder conviction. (R. 34.) The other order, issued a few months later under facility number BC–6814, which is the State Correctional Institution at Frackville (SCI–Frackville), contained a maximum release date of September 28, 1992, relating to the robbery conviction. (R. 39.) Based on the latter order, Geiger's parole supervisor closed Geiger's parole case on September 30, 1992, (R. 42), and gave Geiger documents to prove that he was off parole. (R. 47.)

In December of 1992, Philadelphia police arrested Geiger for aggravated assault and placed him in Philadelphia County Prison. On May 14, 1993, after Geiger had been convicted and sentenced to county prison, the Board issued a warrant to detain Geiger

---

1. The earliest documents in the record show that Geiger was convicted of third degree murder. (R. 1.) Later documents, however, indicate that the conviction was for second degree murder. (R. 16.) Whatever the case, it does not affect the outcome here.

under facility number BC–6814 for violation of his July 29, 1991 parole. (R. 40.) As noted above, the Board issued two orders to release Geiger on parole as of July 29, 1991; the one carrying facility number BC–6814 stated that Geiger's maximum sentence date was September 28, 1992, which had already expired.

When Geiger's parole supervisor received notice of Geiger's conviction for aggravated assault and a copy of the Board's warrant, he learned, after some investigation, that Geiger was still on parole for a murder conviction. Geiger's parole case was subsequently re-opened and, on June 1, 1993, Geiger's parole supervisor met with him at Philadelphia County prison, (R. 43), at which time Geiger signed a form waiving a panel revocation hearing. (R. 43, 46.)

On June 8, 1993, the Board officially verified Geiger's conviction for aggravated assault, (R. 45), and, the following week, the Board notified Geiger that a revocation hearing would be held before a hearing examiner on July 27, 1993. At the hearing, Geiger presented evidence that he was off parole and that his case had been closed. Subsequently, the hearing examiner recommended that the Board schedule a panel revocation hearing. (R. 47.) Pursuant to the hearing examiner's recommendation, Geiger signed two forms: a Request for Panel Hearing, (R. 49), and a Request for Continuation of Hearing, (R. 50).

In October of 1993, the Philadelphia municipal court ordered Geiger released on parole from Philadelphia County Prison as of November 23, 1993. (R. 61.) On November 19, 1993, the Board notified Geiger that his panel revocation hearing was scheduled for November 30, 1993, and Geiger was transferred to a state facility.[2] (R. 51.) At the panel hearing, Geiger argued that the Board's warrant was invalid and that the panel revocation hearing was untimely. The Board, however, rejected Geiger's arguments and revoked Geiger's parole.[3] (R. 56.) Geiger filed a pro se request for administrative review, which the Board denied.

■ On appeal to this court,[4] Geiger first argues that the Board erred in revoking his parole because the May 14, 1993 warrant was invalid. Geiger contends, based on the facility number appearing on the face of the warrant, that the warrant covered only Geiger's sentence for robbery, which expired on September 28, 1992. We disagree.

In *Rudd v. Commonwealth, Pennsylvania Board of Probation and Parole,* 133 Pa.Commonwealth Ct. 668, 672, 577 A.2d 955, 957 (1990) (emphasis added), this court stated:

> We have consistently held that it is of no consequence that a Board's revocation hearing notice references an incorrect institution number *as long as the Board references the correct parole number.*

We explained that the parole number covers all sentences for which a parolee is under supervision. *Rudd; see also Oliver v. Commonwealth, Pennsylvania Board of Probation and Parole,* 89 Pa.Commonwealth Ct. 635, 494 A.2d 10 (1985) and *Snyder v. Commonwealth, Pennsylvania Board of Probation and Parole,* 78 Pa.Commonwealth Ct. 193, 467 A.2d 112 (1983).

■ Here, the Board's warrant made reference to parole number 1998–K. (R. 40.) Thus, the warrant covered all sentences for which Geiger was under supervision, including Geiger's sentence for murder. Because Geiger's sentence for murder carried a maxi-

---

2. The notice states that the hearing would be held at SCI–Graterford, facility number F–5354. However, the record shows that, on November 29, 1993, Geiger was transferred from Philadelphia County Prison to SCI–Frackville, facility number BC–6814. (R. 52.) Then, the Panel Hearing Report indicates that, on November 30, 1993, the hearing was held at SCI–Graterford, facility number F–5354. (R. 53.) We are unable to determine from these records exactly where the Board held Geiger's panel revocation hearing.

3. The Board's order recommitting Geiger to SCI–Frackville again incorrectly identified SCI–Frackville by institution number F–5354. (R. 65.)

4. Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed or the essential findings of fact are unsupported by substantial evidence. Section 704 of the Administrative Agency Law. 2 Pa.C.S. § 704; *Pastuszek v. Commonwealth, Pennsylvania Board of Probation and*

mum release date of January 2, 1999, the May 14, 1993 warrant was valid.

Geiger next contends that his November 30, 1993 panel revocation hearing was untimely because it was not held within 120 days from the date the Board received official verification of his conviction for aggravated assault. Again, we disagree.

■ Before a parolee is recommitted as a convicted parole violator, the Board must hold a revocation hearing within 120 days from the date the Board receives official verification of a conviction. 37 Pa.Code § 71.4(1). When the parolee has waived the right to a hearing by a panel, the revocation hearing shall be held by a hearing examiner. 37 Pa.Code § 71.4(4). Here, Geiger waived his right to a panel revocation hearing on June 1, 1993, and the Board verified Geiger's conviction on June 8, 1993. Thus, the Board had 120 days from June 8, 1993 to hold a revocation hearing before a hearing examiner. The Board fulfilled its obligation under 37 Pa.Code § 71.4 by holding a revocation hearing on July 27, 1993.

However, at the July 27, 1993 hearing, Geiger revoked his waiver of a panel revocation hearing and requested a continuance. Geiger next argues that his panel revocation hearing was untimely because it was held more than 120 days after his July 27, 1993 request for such a hearing. The general provisions of 37 Pa.Code § 71.5 state in pertinent part:

(c) In determining the period for conducting hearings under this chapter, there shall be excluded from the period, a delay in any stage of the proceedings which is directly or indirectly attributable to one of the following:

. . . .

(2) Continuances granted at the request of a parolee or counsel, in which case the

Board is not required to reschedule the hearing until it receives a written request to reschedule the hearing from the parolee or counsel.

. . . .

(4) A change of decision by a parolee either to waive the right to be heard by a panel after asserting it or to assert that right after waiving it. In this case, the hearing shall be held within 120 days of the last change of decision.

37 Pa.Code § 71.5.

Here, Geiger made a written request to reschedule his hearing on July 27, 1993 [5] and, at the same time, asserted his right to a panel hearing after having waived it. Geiger maintains, therefore, that the Board was required to hold his hearing within 120 days of July 27, 1993. Because the hearing on November 30, 1993 was 126 days thereafter, Geiger argues that the hearing was untimely. We cannot agree.

■ Contrary to Geiger's position, we believe that 37 Pa.Code § 71.4(1)(i) is controlling here. Unlike section 71.5, which provides only general rules governing chapter 71, section 71.4 is a special provision pertaining to parolees, like Geiger, who have been convicted of a new criminal offense.[6] Subsection 1 of section 71.4 states in pertinent part:

(i) If a parolee is confined outside the jurisdiction of the Department of Corrections, such as confinement . . . in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel . . ., the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility.

37 Pa.Code § 71.4(1)(i). Thus, because Geiger was confined in a county correctional insti-

*Parole,* 118 Pa.Commonwealth Ct. 6, 544 A.2d 1051 (1988).

5. On the Request for Continuation of Hearing, Geiger explicitly requested that the Board schedule a panel hearing. (R. 50.)

6. We are guided in principle by section 3 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1933, which states:

    Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

tution, the Board had to hold a hearing within 120 days from official verification of Geiger's return to a state correctional facility. Here, Geiger was returned to a state facility on November 29, 1993. The Board thus fulfilled its duty under 37 Pa.Code § 71.4(1)(i) by holding the panel revocation hearing one day later on November 30, 1993.[7]

Because the parole number on the face of the Board's warrant covers Geiger's sentence for murder, making the warrant valid, because the initial revocation hearing was held within 120 days of Board verification of Geiger's conviction and because the panel hearing was held within 120 days of Geiger's return to a state facility, we conclude that the Board did not err in revoking Geiger's parole.

Accordingly, we affirm.

### ORDER

AND NOW, this 21st day of February, 1995, the order of the Pennsylvania Board of Probation and Parole, dated July 25, 1994, is affirmed.

---

7. Geiger also contends that the Board erred by allowing him to complete his sentence for aggravated assault in Philadelphia County Prison before transferring him to a state correctional facility to serve his backtime. We disagree.

If a new sentence is imposed upon [a convicted] parolee, the service of the balance of said term originally imposed shall *precede* the commencement of the new term imposed in the following cases:

(1) If a person is paroled from any *State* penal or correctional institution ... and the new sentence imposed upon him is to be served in any such *State* penal or correctional institution.

(2) If a person is paroled from a *county* penal or correctional institution and the new sentence imposed upon him is to be served in the same *county* penal or correctional institution.

*In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.* Section 21.1 of the Parole Act, Act of August 6, 1941, P.L. 861, *as amended*, 61 P.S. §§ 331.21a (emphasis added). Here, because Geiger was paroled from a state institution and the new sentence for aggravated assault was to be served in a county prison, Geiger had to serve the new sentence before serving the balance of the term originally imposed.