Silas HARTAGE, Petitioner,

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 12, 1995.

Decided July 18, 1995.

---

Kent D. Watkins, for petitioner.

Robert A. Greevy, Chief Counsel, for respondent.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Silas Hartage appeals from an order of the Pennsylvania Board of Probation and Parole (Board) denying Hartage's request for administrative review of the Board's decision to revoke Hartage's parole and to recommit him as a convicted parole violator to serve 40 months backtime. We affirm.

On February 15, 1991, Hartage was released on parole from the State Correctional Institution at Frackville (SCI–Frackville) where he had been incarcerated following two separate convictions for robbery and conspiracy. On September 11, 1993, while Hartage was on parole, Philadelphia police arrested Hartage for simple assault, a misdemeanor of the second degree (M–2); aggravated assault, a felony of the first degree (F–1); criminal conspiracy, a felony of the second degree (F–2); recklessly endangering another person, M–2; and possession of an instrument of crime, a misdemeanor of the first degree (M–1). Two days later, the Board issued a warrant to detain Hartage for violation of parole. (O.R. at 18.)

On April 25, 1994, Hartage was convicted of aggravated assault[1] and criminal conspiracy, F–2, and, on June 13, 1994, he was sentenced to prison for a minimum term of 48 months and a maximum term of 96 months, plus 120 months of probation. (O.R. at 54, 60.) Three days later, on June 16, 1994, Hartage was transferred from Philadelphia County Prison to SCI–Frackville to serve his sentence. (O.R. at 28–29, 70.)

On June 2, 1994, the Board requested official verification of Hartage's conviction and, on July 26, 1994,[2] after receiving the conviction records, the Board recommended revocation of parole. (O.R. at 28.) On July 28, 1994, Hartage requested a panel revocation hearing, which the Board scheduled for September 20, 1994. (O.R. at 27, 29.)

At the panel revocation hearing, Hartage testified on his own behalf, explaining that his arrest and conviction for aggravated assault was the result of his efforts to assist a family friend named Kimberly Smith.[3] Hartage presented documentary evidence to corroborate his testimony.[4] In addition, he raised an objection to the timeliness of the panel hearing. The Board overruled the objection and, upon consideration of the evidence presented, revoked Hartage's parole. Hartage filed a request for administrative relief, which the Board denied.

■ On appeal to this court,[5] Hartage argues that his September 20, 1994 revocation hearing was untimely because it was held more than 120 days after his April 25, 1994 conviction and, thus, the Board's decision to revoke Hartage's parole should be vacated. We disagree.

1. The criminal court record states that Hartage was convicted of aggravated assault, but the document does not indicate whether the offense was an F–1 or F–2 aggravated assault. (O.R. at 60.)

2. The Board asserts in its brief that it received official verification of Hartage's conviction on June 14, 1994. (Board's Brief at 2.) This view is evidently based upon the stamp that appears on the parole agent's request for proof of conviction, which reads: "RECEIVED LIAISON OFFICE COURT PROBATION JUN 14 1994 Pa. Board of Probation and Parole". (O.R. at 53.) However, this is contrary to the Board's Disposition Report and revocation hearing record, both of which show July 26, 1994 as the official verification of conviction date. (O.R. at 28, 70.)

3. Hartage testified that on September 11, 1993, while riding the bus, he saw Smith, who was pregnant, being beaten by Bruce Davis, her boyfriend. Hartage left the bus at the next stop and ran back to Smith's apartment where he saw Davis, who had recently been released from prison, pacing back and forth with a knife in his hand and mumbling threats against Smith. Hartage told Smith to call the police and, in the meantime, he tried to calm Davis. When the police arrived, they advised Smith to go to City Hall and get a warrant or a restraining order.

Hartage accompanied Smith to City Hall, where she got a restraining order. Hartage then took Smith to the hospital. From there he called his wife, who came with others to the hospital to be with them.

That evening, Smith's brother asked Hartage and another individual to go with him to Smith's apartment to retrieve some of her belongings. Davis was at the apartment when the three men arrived and, when Davis pulled a knife, they assaulted him. (*See* O.R., Item No. 14; N.T. at 40–47.)

4. Hartage presented five documents which contained statements made to a private detective by (1) Smith; (2) Krystal Clay, Smith's twin sister; (3) Ronald Smith, their father; (4) Claudia Griggs, Smith's neighbor; and (5) Larry DeSimone, Smith's landlord. (*See* O.R., Item No. 14; N.T. at 62–69.)

5. Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed or the essential findings of fact are unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Geiger v. Pennsylvania Board of Probation and Parole*, —— Pa.Commonwealth Ct. ——, 655 A.2d 214 (1995).

Where a parolee is confined outside the jurisdiction of the Department of Corrections in a county correctional institution and the parolee has not waived the right to a panel revocation hearing, the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a state correctional facility. 37 Pa. Code § 71.4(1)(i). This regulation is based upon the principle that the 120 day period does not begin to run until the Board acquires jurisdiction over the parolee. *Williams v. Pennsylvania Board of Probation and Parole*, 134 Pa.Commonwealth Ct. 597, 579 A.2d 1369 (1990). Nothing in the law authorizes the Board to supersede the jurisdiction of a county criminal court; where a parolee is lodged in a county prison on criminal charges, the Board has no jurisdiction over the parolee until he is released by the county authorities to a state correctional institution. *Terrell v. Jacobs*, 37 Pa.Commonwealth Ct. 493, 390 A.2d 1379 (1978).

Here, after his April 25, 1994 conviction, the Board did not have jurisdiction over

Hartage because he was confined in Philadelphia County Prison pending receipt and disposition of post verdict motions and preparation of a presentence investigation report and because Hartage had not waived his right to a panel revocation hearing. (O.R. at 54, 60.) The county released Hartage to SCI–Frackville on June 16, 1994, at which time the Board acquired jurisdiction. Because Hartage's September 20, 1994 panel hearing was within 120 days of his return to a state facility, the hearing was timely.[6]

Hartage next argues that 40 months of backtime[7] is excessive in light of Hartage's parole history and background and considering that the record lacks evidence to show whether Hartage's conviction for aggravated assault was an F–1 or an F–2. *See* 18 Pa.C.S. § 2702(b). Again, we disagree.

Contrary to Hartage's assertion, we have found evidence in the record to show that his conviction for aggravated assault was an F–1.[8] However, the current regulation

---

6. Hartage contends, however, that the Board could have had jurisdiction over him before June 16, 1994, but the Board did not give him an opportunity to waive the panel revocation hearing until July 28, 1994. It is true that the Board did not give Hartage an opportunity to waive the panel hearing until July 28, 1994; however, that fact does not help Hartage here.

   Where a parolee is confined in a county correctional institution and has waived the right to a panel revocation hearing, the parolee is deemed to be within the jurisdiction of the Department of Corrections as of the date of the waiver. 37 Pa.Code § 71.4(1)(ii). In such a case, the 120 day period begins to run on the date of the waiver *or* the date of official verification of the conviction, *whichever is later*. *Major v. Pennsylvania Board of Probation and Parole*, 166 Pa.Commonwealth Ct. 637, 647 A.2d 284 (1994). Thus, assuming that Hartage would have waived the panel hearing if given an opportunity to do so prior to June 16, 1994, it would have had no effect on the timeliness of the hearing because the Board received official verification of the conviction on July 26, 1994, which is the later of the two dates.

   Hartage also maintains that the Board was aware of his conviction and could have obtained official verification of it before June 2, 1994 when the Board first requested verification, but the Board unreasonably and unjustifiably delayed doing so. Again, we are not persuaded by Hartage's argument.

   Hartage relies on *Fitzhugh v. Board of Probation and Parole*, 154 Pa.Commonwealth Ct. 123,

623 A.2d 376 (1993), where we held, based on the particular facts of that case, that the 120 day period begins to run from the time the Board *could have* obtained verification. Those facts, however, are not in evidence here. Although it is possible that, as in *Fitzhugh*, the Board could have obtained the official verification earlier, there is nothing in the record here from which we can make that finding. We are not permitted to presuppose facts or to incorporate winning evidence from one case into another. Accordingly, Hartage's reliance upon *Fitzhugh* is misplaced.

7. Where the Board orders the recommitment of a parolee as a convicted parole violator, the parolee shall be recommitted to serve an additional part of the term which the parolee would have been compelled to serve had he not been paroled. 37 Pa.Code § 75.2. Board regulations provide presumptive ranges for such backtime based on the offense, the grade of which must rest upon some criminal court record. *Allen v. Pennsylvania Board of Probation and Parole*, 130 Pa.Commonwealth Ct. 111, 567 A.2d 345 (1989).

8. The Board's Disposition Report provides the following details of Hartage's conviction:

   On or about 9–11–93 while acting with others ... and while armed with a "two by four" [b]oard and crowbar, the defendant and his cohorts unlawfully beat and struck the C/W ... [who was] hospitalized in *critical condition with serious head injuries*.

contains no presumptive range for an F–1 aggravated assault. 37 Pa.Code § 75.2. Nevertheless, because 40 months falls within the presumptive range for an F–2 aggravated assault, we do not believe that 40 months is excessive here.[9]

Accordingly, we affirm.

### ORDER

AND NOW, this 18th day of July, 1995, the order of the Pennsylvania Board of Probation and Parole, dated December 14, 1994, is affirmed.

---

(O.R. at 28.) (Emphasis added.) Under Section 2702 of the Crimes Code, 18 Pa.C.S. § 2702, an F–1 aggravated assault occurs when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). Thus, we conclude that Hartage's conviction for aggravated assault was an F–1.

9. In 37 Pa.Code § 75.2, aggravated assault is graded as either an F–2 or M–1 with corresponding presumptive ranges. We note, however, that the F–2 and M–1 presumptive ranges no longer correspond to the Crimes Code which, since being amended on December 11, 1986, does not include an M–1 grade for aggravated assault but, instead, grades aggravated assault as either an F–1 or an F–2.