IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amin Griffin,                                :
                    Petitioner         :
                                             :    No.  762 C.D. 2018
              v.                       :
                                             :    Submitted:  March 15, 2019
Pennsylvania Board of                 :
Probation and Parole,                  :
                    Respondent         :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                    FILED:  April 12, 2019


          Amin Griffin (Petitioner) petitions for review of the decision of the Pennsylvania Board of Probation and Parole (Board) mailed on May 7, 2018, which denied Petitioner's request for administrative relief and affirmed its November 6, 2017 decision to recommit Petitioner as a convicted parole violator (CPV) to serve 36 months' backtime and recalculated his maximum sentence date.[1]  Petitioner contends that the Board failed to conduct a timely revocation hearing.

          The pertinent facts and procedural history of this case are as follows.  On August 19, 1997, a court of common pleas sentenced Petitioner to 11 to 30 years' imprisonment following his convictions for aggravated assault and conspiracy to

---

[1] By *per curiam* order dated June 8, 2018, this Court appointed counsel to represent Petitioner in this appeal.

commit aggravated assault. On March 31, 2015, the Board released Petitioner on reparole to the Joseph E. Coleman Center in Philadelphia, Pennsylvania. On July 13, 2016, the Pennsylvania State Police arrested Petitioner in Bedford County, and he was detained at the Bedford County Correctional Facility (Bedford County Jail). The prosecuting authorities then charged Petitioner with over 40 different crimes. (Certified Record (C.R.) at 1-2, 38-41, 51-61.)

On July 14, 2016, the Board lodge a warrant to commit and detain Petitioner at the Bedford County Jail for violating parole. By decision recorded August 19, 2016, the Board ordered that Petitioner be detained pending disposition of the new criminal charges. (C.R. at 48, 67, 73.)

On April 25, 2017, Petitioner and the Office of the District Attorney for Bedford County entered into a plea agreement in which Petitioner agreed to plead guilty to felony counts of possession of a controlled substance, aggravated assault, escape, and fleeing or attempting to elude a police officer and, also, two misdemeanor counts of recklessly endangering another person. On June 16, 2017, a trial judge from the Court of Common Pleas of Bedford County accepted the plea agreement and sentencing recommendation of the Assistant District Attorney and sentenced Petitioner to an aggregate term of 2 years and 3 months to 15 years' imprisonment at a state correctional institution. Shortly thereafter, on June 25, 2017, Petitioner was transferred from the Bedford County Jail to the Blair County Correctional Facility (Blair County Jail). The Board did not receive advanced notification of this transfer. (C.R. at 100-05, 118, 132, 175.)

On September 8, 2017, the Board served Petitioner with a copy of the notice of charges and parole revocation hearing. On September 25, 2017, Petitioner requested that a revocation hearing be conducted before a panel of the Board. On

2

September 28, 2017, Petitioner was returned to a state correctional institution, specifically the State Correctional Institution at Houtzdale (SCI-Houtzdale). On that same date, the Board convened a revocation hearing. (C.R. at 111-112, 188.)

At the hearing, Petitioner, *inter alia*, objected on the ground that the hearing was untimely and argued that the charges should be dismissed. Petitioner testified and admitted that he never signed a waiver of his right to a panel hearing while he was confined at the Bedford County Jail or the Blair County Jail. Parole Agent Amina Wilkerson, the prosecuting agent for the Board, testified, *inter alia*, that Petitioner had been incarcerated at county prisons and was not transferred to SCI-Houtzdale until the day of the hearing, September 28, 2017. (C.R. at 128-132.)

By decision mailed November 6, 2017, the Board recommitted Petitioner as a CPV, imposed backtime, and recalculated his maximum sentence date. Thereafter, Petitioner filed an administrative appeal, asserting that the hearing was untimely. In a decision that was mailed on May 7, 2018, the Board denied the appeal. (C.R. at 190-193, 201-10.) The Board reasoned as follows:

> The record reflects that you pled guilty [to] the new offenses on June 16, 2017, and you were returned to a state correctional institution ("SCI") for the first time since your release on parole on September 28, 2017. There is no indication that you waived your right to a panel hearing prior to your return to an SCI. Because you were confined outside the jurisdiction of the Pennsylvania Department of Corrections at the time of your conviction, the Board was required to hold the revocation hearing within 120 days of the date they [sic] received official verification of your return to an SCI. 37 Pa. Code §71.4(1)(i). In this case, you were returned to an SCI on September 28, 2017, and the Board conducted the revocation hearing that same day. Therefore, the revocation hearing was timely.

3

(C.R. at 209.)  Petitioner then filed a petition for review with this Court.[2]

## Discussion

Citing *Mack v. Pennsylvania Board of Probation and Parole*, 654 A.2d 129 (Pa. Cmwlth. 1995), Petitioner argues that when the Board lodged its detainer on July 14, 2016, he was confined at the Bedford County Jail solely on the Board's warrant and that the 120-day period began to run as of that date.  Petitioner, as such, contends that the revocation hearing held on September 28, 2017, was untimely.

Where a parolee asserts that the Board held a revocation hearing beyond the 120-day period, the Board bears the burden of proving, by a preponderance of the evidence, that the hearing was timely.  *Koehler v. Pennsylvania Board of Probation and Parole*, 935 A.2d 44, 50 (Pa. Cmwlth. 2007).

Section 71.4(1) of the Board's regulations addresses the timing of revocation hearings for a CPV, stating:

> (1)  A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level except as follows:
>
> (i)  **If a parolee is confined outside the jurisdiction of the [Department],** such as confinement out-of-State, confinement in a Federal correctional institution or **confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing** by a panel in accordance with *Commonwealth ex rel. Rambeau v. Rundle*, 455 Pa. 8, 314 A.2d 842 (1973),

---

[2] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence.  *McCloud v. Pennsylvania Board of Probation and Parole*, 834 A.2d 1210, 1212 n.6 (Pa. Cmwlth. 2003).

4

> **the revocation hearing shall be held within 120 days of the official verification of the return of the parolee to a State correctional facility**.
>
> (ii)  A parolee who is confined in a county correctional institution and who has waived the right to a revocation hearing by a panel in accordance with the *Rambeau* decision shall be deemed to be within the jurisdiction of the [Department] as of the date of the waiver.

37 Pa. Code §71.4(1) (emphasis added).

In interpreting section 71.4(1)(i) of the Board's regulations, this Court has fashioned a particular set of rules for a parolee who is detained at a county correctional institution.  *See, e.g.*, *Mack*, 654 A.2d at 131; *Scott v. Pennsylvania Board of Probation and Parole*, 498 A.2d 31, 33 (Pa. Cmwlth. 1985).  In *Mack*, we concluded that, when a parolee was confined to a county correctional facility after his new conviction in order to complete the sentence imposed for the new conviction, the triggering date for counting the 120 days occurred when the parolee completed the term of his county sentence.  We determined that when the county sentence expired, the Board had acquired jurisdiction over the parolee because, at that point, the parolee was being "held at the county institution solely as a result of the Board's action."  654 A.2d at 131.  Because the parolee completed his new sentence on November 2, 1993, this Court found that the revocation hearing held on March 9, 1994 (127 days later) was untimely, even though the parolee was not returned to a state correctional institution until November 12, 1993 (117 days to the date of the hearing).  *See also Dobson v. Pennsylvania Board of Probation and Parole*, 398 A.2d 252, 253-54 (Pa. Cmwlth. 1979).

Similarly, in *Murray v. Jacobs*, 512 A.2d 785 (Pa. Cmwlth. 1986), we concluded that the date for calculating the 120-day limitation period began when, at the time of sentencing, the parolee had fully served the term of his new county

5

sentence and a trial judge immediately paroled him from the county correctional facility to the Board's detainer. *Id.* at 788-89. In *Hammond v. Pennsylvania Board of Probation and Parole*, 396 A.2d 485 (Pa. Cmwlth. 1979), this Court determined that, when a trial judge sentenced the parolee to a term of probation on the new convictions and did not impose a term of incarceration, the clock for a revocation hearing started on the date of sentencing. *Id.* at 486-87. In both *Murray* and *Hammond*, we explained that section 71.4(1)(i) "is not applicable where the parolee is . . . within the jurisdiction of the Board and is being held in a county institution, not at the request of the county authorities but at that of the Board itself." *Murray*, 512 A.2d at 789; *Hammond*, 396 A.2d at 487.

However, the legal principles in *Mack*, *Murray*, and *Hammond* are applicable only when the Board does not have "official verification" of the parolee's return to a state correctional institution. *Murray*, 512 A.2d at 789. In such a situation, the 120-day period will begin to run on the date when the Board *could have* obtained official verification, *e.g.*, when the parolee completed his new sentence at the county facility (*Mack*), was paroled simultaneously with the imposition of the new sentence (*Murray*), or was sentenced only to a period of probation (*Hammond*). *See Williams v. Pennsylvania Board of Probation and Parole*, 579 A.2d 1369, 1371-72 (Pa. Cmwlth. 1990) ("Our review of the record reveals no official verification which would indicate when the Board learned that [the petitioner] was available for transfer and subject to the Board's jurisdiction . . . . When the record contains no official verification, the 120-day period begins to run on the date that the Board could have obtained official verification."); *Murray*, 512 A.2d at 789 ("As there is no 'official verification' in the record as to when the Board actually learned that

6

petitioner was within its jurisdiction, we will fix the date as that on which the Board *could* have had such official verification.") (emphasis in original).[3]

For purposes of this appeal, we assume, without deciding, that the underlying rationale of *Mack*, *Murray*, and *Hammond* is applicable to this case.[4]

---

[3] Otherwise, this Court has also held "that where a parolee is confined in a county correctional institution, the 120-day period does not begin to run until the Board receives official verification of the parolee's transfer to a state correctional facility." *McMahon v. Pennsylvania Board of Probation and Parole*, 559 A.2d 595, 597-98 (Pa. Cmwlth. 1989) (citing, *inter alia*, *Alger v. Zaccagni*, 388 A.2d 769 (Pa. Cmwlth. 1978)). In *McMahon*, the parolee pled guilty to theft-related offenses in 1987, served time in a county correctional institution, and was then transferred to a state correctional institution. The Board later received official verification that the parolee had been returned to a state correctional institution on December 2, 1987, as indicated in a document entitled, Sentence Status Change Report, otherwise known as Form DC-23B. Because the revocation hearing was held on March 22, 1988, we concluded that the hearing was timely.

Before our decision in *McMahon*, this Court in *Alger* concluded that the time period does not begin to run until the Board receives "official verification" that the parolee had been returned to state custody, without describing or discussing the nature of the evidence or document constituting that verification. Instead, the *Alger* court appears to have assumed and held that "official verification" occurs when there is evidence, in one form or another, establishing the date on which the parolee was transferred to a state correctional facility. *See* 388 A.2d at 771; *see also Johnson v. Pennsylvania Board of Probation and Parole*, 19 A.3d 1178, 1180 (Pa. Cmwlth. 2011).

In other cases, however, panels of this Court have determined that the 120-day period begins on the day the parolee is actually transferred to a state correctional institution without mentioning or considering whether the Board had "official verification" of the transfer. *See, e.g.*, *Hartage v. Pennsylvania Board of Probation and Parole*, 662 A.2d 1157, 1160 (Pa. Cmwlth. 1995); *Woods v. Pennsylvania Board of Probation and Parole*, 469 A.2d 332, 334 (Pa. Cmwlth. 1983); *Perry v. Board of Probation and Parole*, 398 A.2d 739, 740 (Pa. Cmwlth. 1979); *Terrell v. Jacobs*, 390 A.2d 1379, 1381 (Pa. Cmwlth. 1978). Ostensibly, in these cases, the Court proceeded in such a manner based on the apparent fact that section 71.4(1) requires "official verification of the return of the parolee to a State correctional facility," 37 Pa. Code §71.4(1), which necessarily entails that a parolee's return to a state institution will precede verification of that return.

Due to the route of our disposition, we need not reconcile or resolve any perceived conflict within this case law or vis-à-vis *Mack*, *Murray*, and *Hammond*.

[4] We nevertheless note that, at the revocation hearing, it does not appear that any documentation was introduced into evidence that could constitute "official verification of the return" for purposes of section 71.4(1)(i) and, based upon on our case law, it is questionable (or at

**(Footnote continued on next page…)**

Even so, the earliest date on which the Board *could have* obtained jurisdiction over Petitioner was June 16, 2017, when a trial judge sentenced him on the new criminal convictions to a term of imprisonment at a state correctional institution. The Board conducted a revocation hearing 104 days later on September 28, 2017.

Although the Board filed a warrant to commit and detain on July 14, 2016, contrary to Petitioner's argument and pursuant to our decisional law, all the time that Petitioner spent at Bedford County Jail prior to the date of his sentence is *per se* excluded from the 120-day rule. This is because "Petitioner [was] lodged in a county prison on criminal charges filed there," "there is nothing in the law which authorizes the Board to supersede the jurisdiction of a county criminal court," and "therefore the Board had no jurisdiction over the Petitioner until he was released by the county authorities . . . ." *Terrell v. Jacobs*, 390 A.2d 1379, 1381 (Pa. Cmwlth. 1978); *accord Hartage v. Pennsylvania Board of Probation and Parole*, 662 A.2d 1157, 1160 (Pa. Cmwlth. 1995) ("Nothing in the law authorizes the Board to supersede the jurisdiction of a county criminal court; where a parolee is lodged in a county prison on criminal charges, the Board has no jurisdiction over the parolee until he is released by the county authorities to a state correctional institution . . . . Here, after his April 25, 1994 conviction, the Board did not have jurisdiction over [the petitioner] because he was confined in Philadelphia County Prison pending receipt and disposition of post verdict motions [.]"); *see Sharp v. Pennsylvania Board of Probation and Parole*, 467 A.2d 1194, 1196 n.4 (Pa. Cmwlth. 1983) ("Had petitioner

---

**(continued…)**

least unclear) whether Agent Wilkerson's testimony that Petitioner was transferred to SCI-Houtzdale on September 28, 2017, could suffice as "official verification." *See supra* note 3.

been confined in Philadelphia County [Jail] solely at the request of the Board, and had he not been incarcerated on criminal charges lodged there, he would have been within the Board's jurisdiction at all times, and [Section 71.4(1)] would have been inapplicable. However, since the new criminal charges intervened prior to the date the Board detained petitioner, the Board did not have jurisdiction over him until he waived a full Board hearing[.]"); *Woods v. Pennsylvania Board of Probation and Parole*, 469 A.2d 332, 334 (Pa. Cmwlth. 1983) ("It is true that county-confined parolees who do not give up their right to a Full Board revocation hearing must often wait longer: this is so because the 120-day period does not commence during county confinement, but begins later[.]"); *Tate v. Pennsylvania Board of Probation and Parole*, 396 A.2d 482, 485 (Pa. Cmwlth. 1979) ("[T]he time the [p]etitioner spent in a county prison or detention center awaiting disposition of other charges is excluded from the 120[-]day requirement."); Wile, PENNSYLVANIA LAW OF PROBATION AND PAROLE §13:19 (3rd ed. 2010). Therefore, we conclude that the Board conducted a timely revocation hearing under section 71.4(1)(i).

Accordingly, albeit through alternative reasoning,[5] we affirm the Board's order.

_____
PATRICIA A. McCULLOUGH, Judge

---

[5] "[T]he rule is firmly established that this Court may affirm the tribunal below on different grounds if the Court agrees with the result reached below." *Procito v. Unemployment Compensation Board of Review*, 945 A.2d 261, 266 (Pa. Cmwlth. 2008) (en banc); *see Watkins v. Department of Corrections*, 196 A.3d 272, 274 n.3 (Pa. Cmwlth. 2018).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amin Griffin,                               :
                    Petitioner             :
                                            :    No.  762 C.D. 2018
          v.                                :
                                            :
Pennsylvania Board of                       :
Probation and Parole,                       :
                    Respondent              :


# ***ORDER***


AND NOW, this 12th day of April, 2019, the decision of the Pennsylvania Board of Probation and Parole mailed on May 7, 2018, is affirmed.


                              _____
                              PATRICIA A. McCULLOUGH, Judge