# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig Jones,                                    :
                        Petitioner              :
                                                :
            v.                                  :    No. 1037 C.D. 2018
                                                :    Submitted: July 19, 2019
Pennsylvania Board of Probation and             :
Parole,                                         :
                        Respondent              :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                 **FILED:  August 28, 2019**

Craig Jones (Jones) petitions for review of a June 22, 2018 Order of the Pennsylvania Board of Probation and Parole (Board), which affirmed the Board's decision of January 3, 2018, recommitting Jones as a convicted parole violator (CPV).  Jones is represented by appointed counsel, James L. Best, Esquire (Counsel).  Counsel has filed a Motion for Leave to Withdraw (Application to Withdraw) and a *Turner*[1] Letter in support thereof.  For the following reasons, we grant Counsel's Application to Withdraw and affirm the Board's Order.

By decision recorded December 12, 2011, the Board paroled Jones, and he was released from custody on June 21, 2012, to a specialized community corrections

---

[1] *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988).

center. (Certified Record (C.R.) at 4, 7.) At the request of Jones, supervision of his parole was transferred to the New Jersey State Parole Board (NJ Board) pursuant to an interstate compact so that he could live with his mother. (*Id*. at 63.) The NJ Board confirmed Jones's arrival effective August 20, 2012. (*Id.*) At the time of his parole, Jones was serving a sentence for murder, criminal conspiracy, and involuntary deviate sexual intercourse. (*Id*. at 1.) Jones's maximum sentence date was May 20, 2018. (*Id.*)

While on parole, Jones was arrested on December 12, 2014, by New Jersey State Police and "charged with Possession of Heroin, Distribution of Heroin, and Possession of CDS [(controlled dangerous substance)] Paraphernalia." (*Id*. at 12.) Jones was released on bail for these charges on December 14, 2014. (*Id.*) On May 20, 2016, Jones pled guilty to "use/poss[ession] w[ith]/intent to use drug paraphernalia"[2] and was fined $700 by the Superior Court of New Jersey – Salem County. (*Id.* at 19-20.) The Board was notified of Jones's guilty plea via a progress report from the NJ Board on June 17, 2016. (*Id.* at 19.)

Jones was again arrested in New Jersey on July 26, 2016, for possession of a controlled dangerous substance, distribution of a controlled dangerous substance, and distribution of a controlled dangerous substance within 1,000 feet of school property. (*Id.* at 24, 37.) Jones was subsequently released on bail on the same date.

---

[2] Section 2C:35-10(a) of the New Jersey Comprehensive Drug Reform Act of 1987 (Drug Reform Act) makes it a crime for a person to use or be under the influence of a controlled dangerous substance other than for "treatment of sickness or injury." N.J.S. § 2C:35-10(a). Section 2C:35-10(c) of the Drug Reform Act makes it a crime for a person in possession of a controlled dangerous substance to "fail[] to voluntarily deliver the substance to the nearest law enforcement officer." N.J.S. § 2C:35-10(c). Both crimes are graded as disorderly persons offenses. N.J.S. § 2C:35-10(b-c). Pursuant to Section 2C:43-8 of the New Jersey Code of Criminal Justice (Code), a disorderly persons offense carries a potential maximum imprisonment sentence of six months. N.J.S. § 2C:43-8.

(*Id.* at 37.) After receiving notice of the July 26, 2016 arrest, the NJ Board issued a warrant on August 17, 2016, to arrest Jones for violating his parole, and Jones was picked up on said warrant on the same date as its issuance. (*Id.* at 40.) Thereafter, on August 30, 2016, the Board issued its own warrant to arrest Jones and return him to Pennsylvania. (*Id.* at 38.) On September 15, 2016, the NJ Board held a probable cause hearing conducted by a hearing officer, at which Jones pled guilty to several violations of the conditions of his parole, including failure to report arrests, possession of drug paraphernalia, unlicensed driving, and curfew violations. (Probable Cause Hearing Summary, C.R. at 39, 42, 44, 47-48.) The hearing officer found that:

> Since commencing parole supervision [in New Jersey] on 8/20/12, [Jones] exhibited some periods of compliance initially, but more lately has spiraled into a series of violations related to an on-going pattern of non-compliant behaviors. Not only was probable cause found that he has violated 10 conditions of his supervision, but it is further noted that he violated many of these conditions more than once. Given the persistent and, possibly, serious nature of these violations and noting his commitment offense, this Hearing Officer can find no choice but recommending that he be referred to P[ennsylvania] paroling authorities.
>
> Accordingly, it is recommending that subject be held in custody and that his case be referred to Pennsylvania to determine what action is next warranted in his case.

(*Id.* at 48-49.) By order of the NJ Board, Jones remained in custody in New Jersey pending disposition of the charges arising from his July 26, 2016 arrest, whereupon he was to be returned to Pennsylvania. (*Id.* at 65.) On July 28, 2017, Jones pled guilty to "poss[ession] of CDS Fails to give CDS to police (disorderly persons offense)." (*Id.* at 52, 59.) Specifically, Jones pled guilty to violating Section 2C:35-

3

10(c) of the Drug Reform Act, N.J.S. § 2C:35-10(c), (C.R. at 52), which makes it unlawful for a person in possession of a controlled dangerous substance to "fail[] to voluntarily deliver the substance to the nearest law enforcement officer." For this charge, Jones was ordered to pay a fine in the amount of $500 by the Superior Court of New Jersey – Cumberland County. (*Id.* at 57.)

After disposition of these charges, Jones was returned to the custody of the Board on August 22, 2017, and housed at the State Correctional Institution (SCI) at Graterford pending a hearing on his parole violations. (*Id.* at 72.) Shortly thereafter, on August 29, 2017, the Board issued a Notice of Charges and Hearing, charging Jones with violating his parole by having new criminal convictions. (*Id.* at 59.) Jones waived his right to a parole revocation hearing, as well as his right to counsel at such a hearing. (*Id.* at 73.) Additionally, Jones admitted to the May 20, 2016 and July 28, 2017 convictions. (*Id.*). By decision mailed January 3, 2018, the Board, relying on Jones's admission of the May 20, 2016 and July 28, 2017 convictions, recommitted Jones to serve nine months of backtime "for the offenses of possession of paraphernalia, disorderly conduct (2 CTS [(counts)]), and possession of controlled substance." (*Id.* at 83.) Jones's maximum date was recalculated to November 18, 2021, with the Board giving Jones 253 days of credit for confinement and 351 days of credit for backtime. (Order to Recommit, C.R. at 85.)

Jones filed a pro se Administrative Remedies Form on February 1, 2018, alleging that the Board's "decision for 9 months [of] backtime was a[n] error of law due to timeliness and a violation of constitutional law due to due process." (C.R. at 87.) In his Petition for Administrative Review, which accompanied his Administrative Remedies Form, Jones identified three issues with the Board's Order to recommit him as a CPV. (*Id.* at 88-101.) First, Jones argued that the Board erred

by relying on his May 20, 2016 conviction when it revoked his parole because a revocation hearing was not held within 120 days of the conviction. Second, Jones argued he never pled guilty to or was found guilty of possession of a controlled substance and, therefore, the Board erred by relying on such conviction in its determination to revoke parole. Lastly, Jones argued the Board erred by failing to give him credit for all the time he spent at liberty on parole. The Board responded to Jones's administrative appeal by Order mailed June 22, 2018. The Board affirmed its decision to revoke Jones's parole noting that Jones "signed a PBPP-72C [form], waiving [his] right to a hearing and admitting to the violations." (*Id.* at 126.)

Jones, through Counsel, now petitions for review of the Board's June 22, 2018 Order. In his Petition for Review, Jones alleges the Board erred by: (1) not holding a revocation hearing within 120 days after receiving verification of his May 20, 2016 conviction; (2) relying on the two convictions of disorderly persons offenses to recommit him as a CPV because a disorderly persons offense is a summary offense; and (3) failing to articulate its reason for denying him credit for time spent at liberty on parole. On November 20, 2018, Counsel filed a motion to remand this matter to the Board to determine whether: (1) "the New Jersey criminal convictions are the functional equivalent of a Pennsylvania summary offense[;]" and (2) "the Board had any factual basis to forfeit all of his street time." (Motion to Remand, ¶ 8.) The Board admitted in its answer to the application for remand that it "did not provide a reason for its partial denial of credit for time at liberty on parole" and agreed to have this case remanded for that limited purpose. (Board's Answer to Motion to Remand, ¶ 5.) After holding argument on the issue, this Court, by Order dated January 9, 2019, remanded this case to the Board for it to comply with the requirements set forth in *Pittman v. Pennsylvania Board of Probation and Parole*, 159 A.3d 466 (Pa.

5

2017). On January 17, 2019, the Board filed a supplemental record containing notice of the Board's action dated January 14, 2019, explaining that it did not award Jones credit for the time he spent at liberty on parole because of his "prior history of supervision failures" and because he "committed technical parole violations while in [the] state of New Jersey." (Supplemental Record (S.R.) at 2A.)

Thereafter, on March 12, 2019, Counsel filed the pending Application to Withdraw, along with a *Turner* Letter explaining why he believes Jones's arguments to be frivolous and meritless. Counsel's Application to Withdraw, as well as the *Turner* Letter, were mailed to Jones on March 12, 2019. On March 13, 2019, this Court issued an Order directing that Counsel's Application to Withdraw be considered along with the merits of Jones's Petition for Review. Further, the Order gave Jones 30 days to either obtain substitute counsel or file a brief on his own behalf.

Jones filed a brief, pro se, on April 26, 2019. Jones's brief reiterates the arguments made in his Petition for Review. The Board filed a Brief, and, in response to Jones's first argument, that the Board erred by relying on his May 20, 2016 conviction as a reason to revoke parole, the Board states that "Jones mistakenly argues that the Board made a revocation decision on his May 20, 2016 conviction." (Board's Brief (Br.) at 7.) The Board asserts its decision to recommit Jones was based on the July 28, 2017 conviction. The Board further argues that Jones waived his right to a revocation hearing and, therefore, his argument that a revocation hearing was not timely held is frivolous. In response to Jones's second argument, that the disorderly person offense is a summary offense and as such should not have been used by the Board as a reason to recommit him, the Board contends that the New Jersey Code of Criminal Justice (Code) sets a maximum sentence of six months

6

for a disorderly person offense. The Board argues that because the potential maximum sentence date for a disorderly person offense in New Jersey is greater than 90 days, the maximum confinement for a summary offense in Pennsylvania, a disorderly person offense is not a summary offense. Lastly, in response to Jones's third argument, that the Board erred by not stating a reason for not crediting him the full time he spent at liberty on parole, the Board argues it provided a reason in its notice of decision dated January 14, 2019.

Preliminarily, before addressing the merits of Jones's Petition for Review, we must first determine whether Counsel should be permitted to withdraw. Pursuant to Section 6(a)(10) of the Public Defender Act, "public defender[s] shall be responsible for furnishing legal counsel . . . to any person who, for lack of sufficient funds, is unable to obtain legal counsel [for] . . . [p]robation and parole proceedings and revocation thereof." Act of December 2, 1968, P.L. 1144, *as amended*, 16 P.S. § 9960.6(a)(10). While indigent parolees have the right to assistance of counsel in parole revocation proceedings, parolees are not entitled to the assistance of appointed counsel to pursue meritless appeals. *Hughes v. Pa. Bd. of Prob. & Parole*, 977 A.2d 19, 22 (Pa. Cmwlth. 2009). If appointed counsel concludes that a parolee's petition for review is without merit, counsel may seek leave to withdraw as counsel of record. *Id.* at 25. Counsel must first comply with the technical requirements for withdrawal before withdrawal will be permitted. These technical requirements are dependent on whether the parolee has a constitutional or statutory right to counsel. A constitutional right to counsel arises when a parolee raises a:

> colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make

7

> revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

*Id*. at 25-26 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 790 (1973)). When a parolee has a constitutional right to counsel, counsel seeking to withdraw must file an *Anders*[3] brief. However, where a parolee's right to counsel derives from the Public Defender Act, counsel seeking to withdraw need not file an *Anders* brief but instead must file a no-merit letter conforming to the requirements of *Turner*. *Hughes*, 977 A.2d at 25-26.

Pursuant to *Turner*, a no-merit letter must "detail[] the nature and extent of the [counsel's] review and list[] each issue the [parolee] wished to have raised, with counsel's explanation of why those issues were meritless." *Turner*, 544 A.2d at 928. In addition to drafting the *Turner* letter, counsel seeking to withdraw must provide the parolee: "(1) a copy of the 'no merit' letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising [the parolee] of the right to proceed pro se or by new counsel." *Zerby v. Shanon*, 964 A.2d 956, 960 (Pa. Cmwlth. 2009) (citation omitted). If and when appointed counsel has complied with these technical requirements, "this Court will conduct its own independent review to determine whether the petition for review is, in fact, without merit." *Seilhamer v. Pa. Bd. of Prob. & Parole*, 996 A.2d 40, 44 (Pa. Cmwlth. 2010).

Here, Jones admits to the underlying parole violations; therefore, Jones's right to counsel is derived from the Public Defender Act rather than the Constitution. As such, Counsel filed a *Turner* Letter. A review of Counsel's *Turner* Letter shows that it meets the requirements set forth in *Turner*. The *Turner* Letter provides citations to the record, outlines the facts and procedural history, and identifies and discusses

---

[3] *Anders v. California*, 386 U.S. 738 (1967).

8

the issues raised in Jones's Petition for Review. Counsel's *Turner* Letter reflects that he thoroughly reviewed the record and applicable law, which led him to conclude that the issues raised in Jones's Petition for Review are without merit. The *Turner* Letter also advised Jones of his right to retain substitute counsel or proceed pro se. Additionally, upon review of the Application to Withdraw, it is clear Counsel has provided a certificate of service demonstrating he mailed the *Turner* Letter and the Application to Withdraw to Jones on March 12, 2019. Therefore, because Counsel has met the technical requirements to withdraw, we will now turn to Jones's Petition for Review to independently determine whether it is indeed without merit.[4]

## 1. Whether Jones was provided the opportunity for a timely revocation hearing.

Jones first argues the Board erred by revoking his parole based in part on his May 20, 2016 conviction. Jones, citing Section 71.4 of the Board's regulations, 37 Pa. Code § 71.4, argues that based upon his conviction date, the Board had until December 30, 2016, to hold a revocation hearing. Jones asserts that since one was not held during this timeframe, the Board cannot use the May 20, 2016 conviction as a reason for revoking parole.

Pursuant to Section 71.4(1) of the Board's regulations:

(1) A revocation hearing shall be held within 120 days from the date the Board received official verification of the plea of guilty or nolo contendere or of the guilty verdict at the highest trial court level **except as follows**:

---

[4] Our standard of review in parole revocation cases "is limited to determining whether the Board committed a constitutional violation or an error of law and whether the findings of fact are supported by substantial evidence." *Lee v. Pa. Bd. of Prob. & Parole*, 885 A.2d 634, 637 (Pa. Cmwlth. 2005).

(i) If a parolee is confined outside the jurisdiction of the Department of Corrections, **such as confinement out-of-State**, confinement in a Federal correctional institution or confinement in a county correctional institution where the parolee has not waived the right to a revocation hearing by a panel in accordance with *Commonwealth ex. rel. Rambeau v. Rundle*, . . . 314 A.2d 842 ([Pa.] 1973), the revocation hearing shall be held **within 120 days of the official verification of the return of the parolee to a State correctional facility**.

37 Pa. Code. § 71.4(1) (emphasis added). In other words, the 120-day rule is tolled until the Board gains jurisdiction over the parolee. *Hartage v. Pa. Bd. of Prob. & Parole*, 662 A.2d 1157, 1160 (Pa. Cmwlth. 1995). "When a parolee challenges the timeliness of a revocation hearing, 'the Board has the burden of proving . . . that the hearing was, in fact, timely.'" *Fumea v. Pa. Bd. of Prob. & Parole*, 147 A.3d 610, 614 (Pa. Cmwlth. 2016) (quoting *Williams v. Pa. Bd. of Prob. & Parole*, 602 A.2d 434, 436 (Pa. Cmwlth. 1992)).

Here, on May 20, 2016, Jones was convicted of a disorderly persons offense in New Jersey and was ordered to pay fines. The Board received notice of this conviction on June 17, 2016. Jones was then arrested on July 26, 2016, and was released on bail on the same day. Thereafter, on August 17, 2016, the NJ Board issued a warrant to arrest Jones for parole violations, and Jones was picked up on the warrant on the same day. Jones remained in confinement pending the charges arising from his July 26, 2016 arrest. He then entered a guilty plea on July 28, 2017, and was subsequently transferred to SCI-Graterford on August 22, 2017.

It was not until his transfer to SCI-Graterford that the Board obtained jurisdiction over him for purposes of conducting a revocation hearing. Under Section 71.4(1) of the Board's Regulations, the Board had 120 days from August 22, 2017 to hold a revocation hearing unless Jones waived his right to a revocation

10

hearing.[5] While Jones was free for short periods of time after his May 20, 2016 conviction, he was again placed in confinement on August 17, 2016. Because Jones was confined in an out-of-state prison, the 120-day time period by which the Board must conduct a revocation hearing was tolled until his return to Pennsylvania. *See* 37 Pa. Code. § 71.4(1); *see also Hartage*, 662 A.2d at 1160. Shortly after his return to Pennsylvania, Jones waived his right to a revocation hearing on August 29, 2017. This Court has previously held that when a parolee waives the right to a revocation hearing, the parolee "is precluded from subsequently challenging the hearing's timeliness." *Fisher v. Pa. Bd. of Prob. & Parole*, 62 A.3d 1073, 1075 (Pa. Cmwlth. 2013). Thus, even assuming, *arguendo*, that a revocation hearing should have been held at an earlier point in time, Jones is precluded from challenging the timeliness because he waived his right to a hearing. *See id.* Therefore, we must conclude that this argument is without merit.

### 2. Whether the Board erred by considering his convictions for two disorderly persons offenses when deciding whether to revoke Jones's parole.

In his second argument, Jones, citing *Chesson v. Pennsylvania Board of Probation and Parole*, 47 A.3d 875 (Pa. Cmwlth. 2012), asserts that the Board erred by using his two convictions of disorderly persons offenses when deciding whether to recommit him because the offense of disorderly persons is a summary offense. Jones, while acknowledging that in New Jersey a disorderly persons offense carries the possibility of imprisonment for a maximum of six months, argues that a disorderly persons offense in New Jersey is akin to a summary offense in Pennsylvania because in New Jersey a disorderly persons offense "'shall not give

---

[5] We have previously held that "a parolee may waive his right to a final violation hearing." *McKenzie v. Pa. Bd. of Prob. & Parole*, 963 A.2d 616, 619 (Pa. Cmwlth. 2009).

rise to any disability or legal disadvantage based on conviction.'" (Jones's Br. at 8-9 (citing Section 2C:1-4(B) Code, N.J.S. § 2C:1-4(B)).) Further, Jones argues that "[s]ince the legal protections and due process afforded to a summary [offense] in Pennsylvania and a disorderly persons offense in New Jersey are equal" they are analogous. (*Id.* at 9.)

Pursuant to Section 6138(a)(1) of the Prisons and Parole Code:

> A parolee under the jurisdiction of the [B]oard released from a correctional facility, who, during the period of parole or while delinquent on parole, commits a crime punishable by imprisonment, for which the parolee is convicted or found guilty by a judge or jury or to which the parolee pleads guilty or nolo contendere at any time thereafter **in a court of record**, may at the discretion of the [B]oard be recommitted as a parole violator.

61 Pa. C.S. § 6138(a)(1) (emphasis added). In *Chesson*, we concluded that a "summary offense conviction by a magisterial district judge, or a common pleas judge sitting as a magisterial district judge, is not a conviction in a court of record and that the Board is not authorized to recommit a parolee as a [CPV] for such a conviction." 47 A.3d at 880. The question we must answer is whether Jones's convictions in New Jersey can be considered "summary offenses" as defined by the Pennsylvania Crimes Code.

Section 106(c) of the Pennsylvania Crimes Code defines a summary offense as follows:

> **(c) Summary offenses**. -- An offense defined by this title constitutes a summary offense if:
>
> > (1) it is so designated in this title, or in a statute other than this title; or

12

> (2) if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than 90 days.

18 Pa. C.S. § 106(c).

Because the New Jersey Code uses a different classification scheme for crimes than Pennsylvania, and does not use the grading "summary offenses," it is a little more complicated to apply the Pennsylvania definition in this case. As always, where the words of the statute are clear, we do not need to look beyond the clear meaning. *Crandell v. Pennsbury Twp. Bd. of Supervisors*, 985 A.2d 288, 294 n.5 (Pa. Cmwlth. 2009). Here, the definition of "summary offense" provides that it is an offense that is either designated as a "summary offense" or one that is punishable by no more than 90 days of imprisonment. New Jersey does not designate its offenses as "summary offenses." Section 2C:1-4(a), (b) of the New Jersey Code grades criminal offenses, in relevant part, as follows:

> a. An offense defined by this code or by any other statute of this State, for which a sentence of imprisonment in excess of 6 months is authorized, constitutes a crime within the meaning of the Constitution of this State. Crimes are designated in this code as being of the first, second, third or fourth degree.

> b.  An offense is a disorderly persons offense if it is so designated in this code or in a statute other than this code. An offense is a petty disorderly persons offense if it is so designated in this code or in a statute other than this code. Disorderly persons offenses and petty disorderly persons offenses are petty offenses and are not crimes within the meaning of the Constitution of this State. There shall be no right to indictment by a grand jury nor any right to trial by jury on such offenses. Conviction of such offenses shall not give rise to any disability or legal disadvantage based on conviction of a crime. . . . .

N.J.S. § 2C:1-4(a), (b). Therefore, because New Jersey uses a different grading system than Pennsylvania, we must examine whether the New Jersey Disorderly Persons conviction for possession of drug paraphernalia carries a maximum sentence of greater than 90 days.

Section 2C:35-10(a) of the Drug Reform Act makes "[i]t unlawful for any person . . . to possess . . . a controlled substance or controlled substance analog." N.J.S. § 2C:35-10(a). "Any person who uses or who is under the influence of any controlled dangerous substance . . . is a disorderly person." N.J.S. § 2C:35-10(b). Further, any person in knowing possession of a controlled dangerous substance "who fails to voluntarily deliver the substance to the nearest law enforcement officer is guilty of a disorderly persons offense." N.J.S. § 2C:35-10(c). In New Jersey, "[a] person who has been convicted of a disorderly persons offense . . . may be sentenced to imprisonment for a definite term which shall be fixed by the court and **shall not exceed 6 months**." Section 2C:43-8 of the NJ Code, N.J.S. § 2C:43-8 (emphasis added). Thus, by the plain language of the New Jersey statute, a disorderly persons offense would **not** be classified as a summary offense in Pennsylvania because conviction of such an offense carries the possibility of imprisonment for **greater than 90 days**. Since a disorderly persons offense would not be a summary offense in Pennsylvania, a charge of disorderly persons would be heard by a court of record. *See* Section 1515(a)(1) of the Judicial Code, 42 Pa. C.S. § 1515(a)(1) (setting forth the jurisdiction of a Pennsylvania magisterial district judge). Therefore, the Board did not err by considering Jones's convictions of two New Jersey Disorderly Persons offenses when deciding whether to recommit him as a CPV. Accordingly, we must conclude that this argument is without merit.

14

**3. Whether the Board articulated a reason for denying Jones credit for his time spent at liberty on parole.**

Lastly, Jones, citing *Pittman*, argues the Board failed to articulate its basis for denying him credit for the time he spent at liberty on parole. Pursuant to Section 6138(a)(2.1) of the Prisons and Parole Code:

> (2.1) The [B]oard **may, in its discretion, award credit** to a parolee recommitted under paragraph (2) for the time spent at liberty on parole, unless any of the following apply:
>
>> (i) The crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.C.S. § 9714(g) (relating to sentences for second and subsequent offenses) or a crime requiring registration under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders).
>>
>> (ii) The parolee was recommitted under section 6153 (relating to early parole of inmates subject to Federal removal order).

61 Pa.C.S. § 6138(a)(2.1) (emphasis added). In *Pittman*, the Supreme Court of Pennsylvania held "that the Board must provide a contemporaneous statement explaining its reason for denying a CPV credit for time spent at liberty on parole." 159 A.3d at 475. Here, the Board admitted it did not originally comply with *Pittman*. However, on remand, the Board issued a decision explaining it denied Jones credit because of his "prior history of supervision failures" and because he "committed technical parole violations while in [the] state of New Jersey." (S.R. at 2A.) As the Board on remand did comply with the dictates of *Pittman*, this argument is without merit.

To the extent that Jones argues that the Board erred by not crediting him the time he spent at liberty on parole because he did not commit any of the crimes enumerated in Section 6138(a)(2.1)(i), this argument is without merit. Said section

15

provides that the Board must not award credit for time spent at liberty on parole to paroles who have committed those enumerated crimes. Said section does not limit the Board's ability to otherwise not award credit for time spent at liberty on parole. Such decision is within the Board's discretion. *Id.* Therefore, we cannot find the Board abused its discretion by not awarding Jones credit for the time he spent at liberty on parole.

Thus, based upon the foregoing, Jones's Petition for Review is wholly without merit. Accordingly, we grant Counsel's Application to Withdraw and affirm the Board's June 22, 2018 Order.

_____
**RENÉE COHN JUBELIRER,** Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Craig Jones,                          :
                    Petitioner        :
                                      :
          v.                          :          No. 1037 C.D. 2018
                                      :
Pennsylvania Board of Probation and   :
Parole,                               :
                    Respondent        :

# **O R D E R**

    **NOW**, August 28, 2019, the Motion for Leave to Withdraw as Counsel filed by James L. Best, Esquire, is **GRANTED**, and the Order of the Pennsylvania Board of Probation and Parole, entered in the above-captioned matter, is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge